Good afternoon, your honors. I want to apologize once again to all of you for being late. It's okay. The flight was delayed three hours. I ran all the way from Oakland. I've been in your spot a few times in my life. Here, too, I'll bet. Here, too. I'm not answering any questions until I talk to my lawyer. Okay. Don't worry about it. Here's a cardinal lawyer's sin. I'm going to be brief, and I am. Okay. McDaniels went to the jury on two alternative theories. They were alternative theories. They were not dependent theories. One did not depend on the other. Just like in a products liability slash negligence case, a plaintiff can win on one, lose on the other, even though it's almost all the same evidence that's presented. It happens all the time. It's happened to me. The way the questions were given to the jury, the first questions were on retaliation. The second batch of questions were on disability. If retaliation truly depends on a finding of disability, that whole exercise was backwards, because if McDaniels would have to prove disability discrimination first, which is apparently what Schell – I'm sorry, Noble is saying, that verdict was backwards. So the jury said no to both, but the first thing they said no to was retaliation. Retaliation is not dependent on a disability finding. It's not dependent on that. That's their – that there was no disability discrimination, that's their burden on the retaliation case. Now, once upon a time way, way, way back, Noble misled the trial judge by misconstruing a prior state court action, saying that it had been conclusively shown that Noble did not violate any health, safety, or environmental law or regulation. And this court, in its opinion, called him out on that. Noble's doing the same thing now, talking about things that have been conclusively proven, talking about things that are undisputed. And I pull out both pages 24 and 33 where the use of those words is thrown around. There wasn't much that was conclusively proven in this trial, and there's virtually nothing that's undisputed. One thing that the jury said, and only one thing, was an answer to this question. This is a quote, and it's from the excerpts on page 165. Did Noble fail to provide a reasonable accommodation? That was the only question the jury answered. They didn't say who they believed, who they didn't believe, what was conclusive, what wasn't conclusive. And they answered no. It was the plaintiff's burden on that. Now, in a retaliation case, that becomes Noble's burden. And who in the world — What is Noble's burden? As I understand it, ultimately they ruled for the defendant on the disability claim, so they found that he wasn't fired in violation of the disability statute, right? What they found, they said no to the following question. I understand that, but it was also a verdict eventually, right? This was a special verdict, but it was also a verdict, i.e., does he recover or not recover on the disability claim? And the answer was no. It was an ultimate verdict, right? Well, there was an ultimate judgment. You mean to say that they only answered questions and they did not — this was the entire verdict and there was no ultimate determination that he, therefore, didn't recover with regard to his disability claim? I wasn't there, but from the best I've been able to pick up from all the material submitted, all of the questions asked of the jury are at pages 164 and 165. I don't see — doesn't mean there's something I haven't seen, but that's all I've seen. Well, you may be right. That's all I've seen. But what that means is that there was never actually an answer to whether — then there was no answer to why he was fired. They just said they didn't fail to reasonably accommodate him, and that's it. There was no finding as to the reason for the termination at all, one way or another. Again, I'm going to save myself some ground. I may be wrong, but I think that's the totality of it. And so, Your Honor, if I could go back to the point I was trying to make is this. On that question, did Mobile fail to provide reasonable accommodation? McDaniel failed on his burden of proof because they said no. And what I'm posing is this. On the retaliation case, which they never got to — they didn't hear the evidence on the retaliation case, as this Court's already pointed out. They didn't hear it. So on the retaliation case, if they had heard all of McDaniel's evidence, then it's Mobile's turn to step to the plate, and it's now Mobile's burden to show there was reasonable accommodation. And the fact that McDaniel's — But that's what I don't understand. Why would Mobile have to show anything about a reasonable accommodation in the retaliation case? Why couldn't they just show that we didn't retaliate? Well, they could show that, sure. But they also want to show their alternative theory. And their alternative theory is, gee, we couldn't accommodate him. I mean, they write that all over their briefs. They say this case is open and shut and closed already because it's been conclusively found they couldn't accommodate him. So if McDaniel's had been allowed to put on all of his evidence, and that evidence, all of the environmental stuff that we talked about, motive, motivation, that this Court has already said it was error not to admit, if he'd been able to put all of that on, now it's Mobile's turn to defend itself. And what will Mobile say? Well, one thing, that's a bunch of baloney. Of course they will, just as Your Honor said. But in addition, they'll say, and, and, we had a valid alternative reason for firing this guy, and the valid alternative reason was we couldn't accommodate him. But now, Your Honor, it's their burden. And the fact that McDaniel's didn't carry his burden in this truncated trial does not automatically mean that Mobile will carry its burden on the exact same question in a bigger trial. Well, not to get to any of this, or do we just say, we said there was prejudice on this issue, and we sent it back essentially to hold a trial and to introduce the evidence, and the district judge just didn't follow our mandate. And whether we were right or wrong, maybe we were not even right. But we, we said to the district judge that there was prejudice here, i.e., that it did make a difference that he wasn't, that he wasn't allowed to introduce this evidence, and Mobile seems to be trying now to redo that determination. Well, Your Honor, I knew you'd say something like that, and I guess it wouldn't surprise you to hear that I don't think you made a mistake. But Mobile can tell you all why it thinks you made a mistake. But the trial judge disregarded you. And sure. So thank you. That was, thank you. If the jury ever got to consider motivations in this case, as it will if we actually have a trial, the jury would, I believe, look at all of Mobile's arguments in a totally different way. So that's all I have to say for now, unless there are any other questions I'm going to reserve. Thank you. Good afternoon, Your Honors. I'm Martha Doty. I represent Mobile Oil Corporation, and we meet again on this case, which is now 10 years old, or entering its 10th year. And in our view, the district court properly brought this case to an end when it granted summary judgment on remand. Now, do you say that the district judge, in granting summary judgment on the retaliation claim, acted consistently with our mandate? Actually, I do. Because? Because it looks as though we said, we said do trial. District judge has no new evidence in front of him, and nonetheless doesn't say, I'm not doing a trial. I'm giving summary judgment. How does that comply with our mandate? Well, in a couple of ways. First of all, under this Ninth Circuit's recent decision in Hoffman v. Tonnemacher, a court can hear successive summary judgment motions. But that's not the question. The question is whether the summary judgment that, in taking the evidence that we said was the exclusion of which was prejudicial, it's now introduced, and he says, the district judge holds, and you asked him to hold, that despite the presence of this evidence, the verdict is still the same on the same trial transcript, with you introducing nothing new. How can that be consistent with our mandate? Well, because the facts of the case had changed. Because by the time when we got back down on remand, we had an affirmed jury verdict. But that was true in this court. Right? We affirmed the jury verdict on that ground. So it's nothing different than what we were dealing with. Well, first of all, I believe that the trial judge has discretion to run his courtroom, and I do not believe that he did. Well, he has to follow the mandate of the court. And we said that he had improperly excluded evidence of Mobile's environmental and safety violations, and that related to the retaliatory discharge claim or the whistleblower claim. So they're two different. Well, if the whistleblower claim was independent of the other claim. And so that's what the problem is. Well, let me address that in two different ways. First of all, what the Court said in its opinion was, in my view, not necessarily that its decision mandated a new trial. It mandated that the court go back – that the case go back down to the district court. But in its ruling that the erroneous evidentiary ruling prejudiced McDaniels, the Court says that, among other things, one aspect that McDaniels had to prove in order to prove his retaliation case was that he reasonably believed his safety complaints to be true, citing Flate v. North American Watch Corporation. In other words, what this Court, to me and to the district court judge, appeared to say was that by excluding that evidence, among other things, you precluded, Mr. ---- Isn't that a fact question for a jury, that McDaniels just kind of made this up and he wasn't complaining of environmental and safety violations of good faith? Well, it's only one aspect of a prima facie case of retaliation. And in our view, Mr. McDaniels didn't even get to the point where he should have been allowed to try that claim. So why would we have reversed that? If that were true, then obviously it was non-prejudicial and you should have won, but you lost. Well, in my view, the court in mandating or sending the case back down on remand was saying to the district court, now you need to determine whether there is a case to be tried. But let me ---- I would like to just answer Justice Pegerson's question, because I think the case essentially boils down to four or five incidents that McDaniels claims were retaliatory. And as to each of those retaliatory claims, even if Mobil had a retaliatory motive, it was able to establish with evidence that the jury heard that the actions were taken for a legitimate non-retaliatory reason. Just by way of saying ---- Well, it was able to establish. What it established was that they didn't ---- well, first of all, I'm not even sure it established this, if you actually look at the verdict form. The verdict form shows that they established is that they didn't fail to reasonably accommodate him. That could have been because they did reasonably accommodate him. It could have been because he didn't deserve reasonable accommodation. It could have been for lots of reasons. And the jury verdict doesn't seem to have anything to do with the termination. But let's suppose we read into it the notion that the jury found that he was not fired for a ADA violation, or for a ---- based on his disability, i.e., for failure to reasonably accommodate him or otherwise. That would be reading into the verdict, because the verdict doesn't actually say that. Is that right? Well, the verdict ---- I don't agree with that. I'm sorry. What the verdict says is, did Moble fail to reasonably accommodate him? That is a shorthand way of asking the jury, based on all of this evidence that you heard, that Moble interacted with his doctors, that he provided him with light duty, that it worked with him to figure out if it was within his restrictions. But, you know, we certainly can't say that the jury found all that. I mean, that's the thing about jury verdicts. They're black boxes, right? So all we know ---- now, this is a slightly less of a black box, because it was a special verdict. So we actually know that all they really found was that they didn't fail to reasonably accommodate him. But what does that mean? What that means, and what the evidence showed and what the jury instructions asked the jury to find was, at the end of the day, did Moble have a job for Mr. McDaniels that he could do with these incredible restrictions that basically said he could never set foot in a refinery premises, or did it have any alternative routes for him? Maybe not. Maybe they did reasonably accommodate him, but nonetheless, they would have kept him on unreasonably. I mean, they would have found something for him to do if it wasn't for the retaliation problem. Well, there was no evidence. And that Mr. McDaniels has not created ---- put aside whether Judge Hatter was improperly allowed us to bring our summary judgment motion, and let's look at what the evidence was on the motion. Mr. McDaniels failed to create any triable issue as to pretext. Moble put in its evidence that all of the actions that it took in response to things that he claims were retaliatory were based on legitimate, non-retaliatory evidence. But it's the same evidence that you had at trial, right? It's the same evidence that he ---- it's the same arguments that he was making. It is the same evidence at trial, but where is the showing of pretext by Mr. McDaniels? For example, if he ---- Why does he need a showing of pretext? Ultimately, what ---- Because he's imposing a summary judgment motion. Ultimately, what he has to prove is that you fired him for a retaliatory reason. In some method he has to ---- some way or other he has to prove that. Well, in opposition to our summary judgment motion, he would have to show that the reasons that we gave that we contend were legitimate and non-retaliatory were pretextual. And in ---- That isn't what you even argued here. You argued here that you are assuming that, in fact, this was a reason that you did have a retaliatory motive. And then you argue that you ought to be able to prevail on the shifted burden, which as far as I can tell in California would have to be a clear and convincing evidence shifted burden. And certainly the prior verdict doesn't prove that. Well, I don't agree with that. First of all, we did argue both. We argued the mixed motive same decision defense, and we also argued a standard McDonnell-Douglas defense. And I do not agree with the analysis that we would have to prove that by clear and convincing evidence. There is no case law that holds that where a plaintiff throws in a Labor Code section 1102.5 citation, that somehow that brings the standard up to clear and convincing evidence. And in fact ---- Last time around we said that it was relevant evidence improperly excluded to what the nature of Moble's safety violations were of which Mr. McDaniels was complaining. And we sent it back for trial, introduced that, and then see whether the jury thinks that this is in fact a retaliatory discharge. I can see why a jury without that evidence might say it's not retaliatory, but with this evidence might find it's retaliatory. I don't think we were wrong in the question that that's prejudicial. I also think it's possible that a jury with that evidence might even think differently with respect to the ADA claim. Although we affirmed ---- But they did not appeal that. Pardon me? They did not appeal that. I understand that. But I don't ---- but I think it makes it hard for you to rely on the ADA claim when that evidence was in front of the jury with respect to the ADA claim. Well, I respectfully disagree with that. To suggest that we would not be able on a retrial to introduce all of the evidence that the jury relied on that constitute our legitimate non-retaliatory reasons would be grossly prejudicial to most. Well, you can introduce everything you want. I'm not listening. That's not the problem. You know what your problem is? You have a little touch of arrogance, and you're not listening to the judges. You're a little bit disrespectful. But you know it all. So keep that in mind. Let me go back. Okay. What I'm interested in is what should we be able to infer from what we do know as to what any jury in the future might do if they're given a retaliation claim with the evidence of the nature of the mobile safety violations of which Mr. McDaniels complained. And we held before, and I still think we're right on this point, that it may very well make a difference to a jury on a retaliation claim the nature of the safety violations of which he was complaining. Maybe the jury would think, you know, they really didn't want this stuff out there because this was really so serious, and we really do think it's retaliation. Or, you know, if they think, well, it's just trivial. I mean, why would they retaliate against he was just being a pain in the neck anyway. He was not a model employee. This really didn't have anything to do with it. I think a jury could reasonably come to that conclusion. But I was moving over to, okay, what can we tell about the ADA verdict where the jury holds, and that's not disputed, the jury did hold, that they did find that there was reasonable accommodation. It seems to me possible that if the jury had had evidence of the safety violations, a jury might even decide indifferently on that question. I mean, juries do all kinds of crazy things. But what I really come down to, and we've talked about this before, quite aside from the sort of inference that we can draw or must draw from the jury verdict that's upheld in the ADA. That one's there. I agree with you. I don't see how Judge Hatter obeyed our mandate. We sent it back for trial. And he said, I'm looking at this same stuff that you guys had in front of you on appeal, and I'm not retrying it. But to me, I can get to all the rest of the stuff if you like, but this one plus one is two for me. We told him to do something and he didn't do it. Well, I guess I would say that when it got back down on remand and we started thinking about what exactly is it that we're going to try, it became a question of deciding whether when we put in the evidence, all of this environmental evidence that Mr. McDaniels was improperly precluded from bringing in before, how does that come into play with respect to the decisions that he claims were retaliatory? For example, his being reassigned from the... I'm sorry, I didn't hear that. I said, how is it retaliatory? I heard that, but for example, his being... For example, his being reassigned out of what was called the CCB, the Central Console Building, where he was doing computer-based training as a light-duty assignment. His argument is that he turned in a witness statement on May 18th and on May 19th he was assigned out of that building and put back out in the unit. So pretty quick he's out pulling weeds. Yes, so he's out there. That sounds like, I don't think you want that evidence in front of the jury, but you're going to have to have it in front of the jury. Okay, that's not very good evidence for you. Well, perhaps it doesn't sound like it on its face, but the countervailing evidence is that on the exact same day that he turned in his witness statement, his doctor released him from that type of work back out into the unit and back out into the outside unit. Now, light duty is supposed to be transitional. He wasn't doing computer work in the building. He was just in the building catching up on his computer-based education. He actually finished it that same day, May 18th. So while perhaps it sounds retaliatory on its face, in my view that's just part of his prima facie case. It sounds like there's a temporal proximity between the two. On our summary judgment motion, we said, okay, we'll take that small example. We had a legitimate non-retaliatory reason for it. His doctor released him back out into the refinery. He didn't come back. Let me interrupt you if you don't mind. That just sounds like an argument to the jury, and that's what we said to Judge Hanner. Listen, let's try the case. You might win in front of the jury. Well, it seems to me that for purposes of judicial economy and efficiency, the district court was entitled to say, okay, if there are five examples like that where for every act of alleged retaliation, Mobile has produced evidence that it had. But none of that is news. That is to say, we knew all of that when you were here before, and we said to Judge Hanner, take this case and try the retaliation claim with the improperly excluded evidence now admitted. Judge Hanner looked at the same record and said, I'm not doing it. Well, and I think that the reason is because he sat through the trial and he knew that the evidence that reflected what Mobile did and the reasons why Mobile did it were so strong that a retaliation claim couldn't withstand even summary judgment. And I think that's the reason why the district court was entitled to say,  we know all of that when you were here before. And it often is the case that the district judge is right and we're wrong. But, you know, it's the familiar problem. I mean, we may be wrong, but we're the appeals court. All right. I guess the real question that I have is, as you say, this case is 10 years old. From my point of view, it's unfortunate you took this route because it could have been over with. And you might well have won your problem. I mean, if the case is what you say it was, you would have won. Should we send this off to mediation to see if we can get this done without going back again and doing it all again? Would it be helpful? Well, we were before the Ninth Circuit's mediation panel, and we –  At this round? At this round. At this round. Oh, really? And there – I mean, I don't know whether – I don't want to reveal anything improper. It was not – we didn't even participate in the process. The parties, I should say. It was not – All right. So I don't – I suppose that's a question that would be fair to ask of Mr. Pleas as well. Okay. You know, it's probably going to come out the way you want it to come out. But you have the views of the panel. And you just don't know how a jury is going to come out. The likelihood is that it will come out the way Judge Hatters thought it should be decided. But we don't know. And you never know that if you present it to a jury, you're going to get a different jury this time. And we'll see how it turns out, that's all. And – but, you know, the instructions from the court were clear. Did you make this argument that it should come out the same way, given the evidence at the – at the trial? You made that argument to Judge Hatter in your papers, didn't you? Well, if I understand your question correctly, I think what happened was we went back down to the first scheduling conference before Judge Hatter, after the case had been remanded. And at that point, we – we requested that we be permitted to file a summary judgment motion based on the arguments that we asserted in the summary judgment motion. And he granted our request. Well, you could have tried the case in the same amount of time, the due summary judgment motion. In fact, you could have tried it on the trial transcript plus the evidence and probably had the whole jury trial in two hours. Well, you know, in thinking – I will say that as a practical matter, when I sat down to think about how will I retry this case, what I had to ask myself was how am I going to put on all of the evidence of the disability, the responses that Moble gave to Mr. McDaniels with respect to his disability issues, because it really – I understand that the argument is that the two claims aren't dependent, but really the evidence is dependent upon each other, because ultimately what Mr. McDaniels is saying is your claim that you didn't have a job for me is false. Well, how do we get – how do we, Moble, defend? Well, not necessarily. I mean, you're making that – the problem is that you're assuming that these things are mutually exclusive. I don't think – The finding was that you – that there – by preponderance of the evidence, the employer did not fail to accommodate him. That doesn't tell you that they didn't actually act for a retaliatory motive. They had a good motive. They could have relied on it, but we don't know they did. Let me say it this way. That might be another way of stating what just Berzon just said. I mean, there is a duty to make a reasonable accommodation under the ADA. But, of course, that doesn't mean the employer has to do everything possible. The employer only has to go up to the level of reasonable accommodation. And some employers will go well beyond the duty required of them under the ADA. And I think it's a possible argument that if they really wanted to keep him on, if they hadn't been angry at him for his whistleblowing, they might have actually gone beyond what they were required to do by the ADA. And what put them to the level of saying, listen, we're just going to insist on our rights under the ADA. We're going to accommodate no more than we absolutely have to. And the reason we're not going to accommodate any more than we absolutely have to is we don't like what you did with respect to the whistleblowing, and that's why we're doing this. I think that's logically a coherent response to Judge Hatter's conclusion that the ADA verdict settles the retaliation verdict. Well, I think I actually disagree with all due respect, because the restriction that he got here, it isn't something like he can't lift more than 25 pounds. The restriction that he got is he can never be exposed to any heat, humidity, vapors, dust, irritants. This is an oil refinery. There is no job there where we could guarantee that he would never be exposed. And his own doctor said any further exposure. All right, but it's not worth arguing about. The point is that all we have is a jury verdict. That may be what you think happened, but it isn't necessarily what the jury found. We're back to the black box. In any event, thank you. Thank you. I hear what you're saying. Considering his physical condition, there was no way that he could have been accommodated. And so, therefore, it was okay to fire him. And that even though there might be an element of retaliation, it doesn't really matter because there was no way in the world that he could have ever held a job. But then on the other hand, he might argue that I suffered. I don't want other people to suffer. And so I'm causing these environmental deficiencies to be made known to the union and to other people. And so that might have been an element in the firing. It wouldn't have made any difference because there was no work that he could ever do in that refinery. So the whistleblowing was really not a factor. I guess something like that. Well, that's right. I mean, there was no job. And as Justice Brezon said in her concurring opinion in the Scott case, the termination was inevitable. There just simply was no job there given his restrictions. And under those circumstances, in our view, summary judgment was proper and the district court ruled properly. What if he was whistleblowing to protect others that might come along that were exposed to what he thought were environmental hazards to working people? Well, he may very well have been doing that. But ultimately he has to establish that his termination was causally related to his whistleblowing. And here what the evidence shows is that he got restrictions that were so severe that there was no accommodation for him and no job. Which you will have an opportunity to tell the jury. Thank you. What is your response to the mediation possibility? The way I recall it, although I wasn't personally involved, it was underway or the groundwork for it was underway at the time that the summary judgment motion was either filed  or a mediation, and so we had to go back to the jury and go back to the jury and have the judges either decide one or the other. So we had taken some, not huge, but some steps in that direction. And I don't have any ‑‑ So you don't think there was a mediation attempt after the appeal was filed in this case? There were steps taken toward setting up a mediation. After the appeal. After the summary judgment, after the appeal was done. No. Excuse me. No. The answer is no. Okay. To my knowledge. I'd like to very, very gingerly put out one thing. It is a really old case. It is? Yes. It is. It is a what? Really old case. I mean, the case has been around for a long time. I know. I read the papers. I know there aren't enough judges, there aren't enough justices. There isn't enough, there isn't enough, there isn't enough. I read that just like every other lawyer does. Well, maybe there are too many lawyers. Yes. And I'm going to do something about that pretty shortly, Your Honor. Don't jump out this window. No, no. I'm humming and hawing because is the district court judge the right person to hear this yet again after making a pretty blatant mistake the first time around on the motion in lemonade rulings and then? Well, we're very, we act very gingerly when it comes to replacing district judges. Okay. So I've floated it and that's as far as I want to go. Thank you for listening. Appreciate it. All right. Okay. The manual has been submitted.
judges: Pregerson, Fletcher W. , Berzon